Thank you, Your Honor. Good morning. May it please the court, Andrea Marcus for the appellant OA. I would like to save a reserve four minutes for rebuttal. OA is a 10 year old boy with autism. His autism causes him to exhibit extreme behaviors and social communication deficits. We're seeking reversal of this district courts completely unsupported finding that OA does not need the applied behavior analysis treatment that he has been prescribed in order to access his school. Applied Behavior Analysis Treatment is commonly referred to as ABA treatment. The unopposed evidence at trial established that appellee can an appellee concedes that while at school, without his ABA treatment, he exhibits and I quote, extreme behaviors, including violence towards his mother, other students, his teachers and staff and he defecates and urinates in his pants, elopes, which refers to him running away and uses age inappropriate and graphic language. While at school during the first and second grade, the principal reported at trial. He would walk around campus unwilling to go to class. There was no evidence presented by anybody at trial that he could participate in school or access it at any level without the ABA treatment. Can I can I ask for clarification on this? And just a basic point? Am I right in understanding that the school is not denying anything that you've just said? Rather, they're saying we have our own ABA trained aides that we're happy to provide. And if we do that, your client will have meaningful clients or against your client's mother's insistence that the ABA trained therapists or aides who are there in the classroom be provided by this other private private group? Is that right? Am I right on that? Yes. And there's a few different caveats. One is that the district never offered anything that said ABA or one on one prior to this matter. In fact, the and and prior to this matter being filed, when once this was filed, then the district claimed that an IEP it offered in November of 2019 had in fact offered that but it did not. And that became clear in the testimony at trial and I have sites to the record for that. What what testimony are you referring to? I didn't see that. One is the behaviorist with the school district, when he was asked whether or not the behavior plan that he was referring to said one on one, or ABA anywhere he said no, it did not specifically. Also, what's important to note is that the trained aid that they have claimed was available. There was also the behaviorist testified at trial that they had just started training when Oh, a finally was pulled out of school because his behaviors were only worsening. And that was in February of 2020. And then finally, I would just note and although it's not in the record, the there was a an ALJ finding regarding specifically that IEP and behavior plan that allegedly offered the ABA and one on one. And the ALJ found that the behavior plan was inappropriate because it did not address. Oh, a is defecating in his pants or the violence with which he had to be helped in the gate when he was dropped off each morning. But I can give you the sites to Mr. Billy Hendricks testimony at trial. And I can do I can find that for you. When on rebuttal. Are there any other questions? Just in follow up to Judge Watford's question, what what evidence was there that an ABA therapist even accompanying him in school would necessarily help the access to education itself? There's the record seems to be a little bit devoid in terms of what the specific evidence was, as to how that would help him particularly, there was a great deal of testimony as to autism, but his actual access to education on a daily basis, what is in the record as to that? There was a great deal of testimony from the clinician that oversees his his medically prescribed insurance funded treatment about what they were working on. And in fact, one of the bits of evidence that was submitted was their treatment plan. And it included what what they call sometimes pre learning skills, the ability to follow directions, which is also a communication skill, the ability to stay on task. By the time he was pulled from school, he was unable to, to participate in anything effectively. Also, it's important to note that the district court did acknowledge that OA had made progress as a result of the applied behavior therapy. And there was no evidence of anything else in the record that had provided any progress. And in fact, when Mr. Hedrick was questioned about what kind of training and what kind of program would be offered should OA return to school without his medical ABA treatment, the judge made his own objection to that line of questioning as speculative. So what we have is the only, only thing at trial or in here at in evidence that has had any effect on this child's severe, severe behaviors has been the ABA treatment. And the judge acknowledged that in his decision, versus a speculative offer claiming a document said something it didn't say. It's important to note that the district did not actually provide the document. They didn't provide the behavior plan and they didn't provide the IEP. Instead, they, they provided testimony by somebody who said, well, it didn't say ABA and it didn't say one on one, but we would provide that. Right. Can I ask you about Mr. Hendricks, the testimony you were referring to? Hendrick. Yes, Billy Hendrick. Sorry. I mean, I don't know if you have the transcript there, but I'm looking at ER 188 to 189. He is asked, did the school district enter about, you know, November 2019 offer a one to one aid to a company? Well, it says OB, but I guess it's OA throughout the school day. And he says, yes. So there, that's what they say. And then on the next page, he says, he's asked the same question in November 2019, did the school district offer ABA, an ABA improvement plan? And he says, yes, but we just refer to it by a different name. And he is asked specifically is the BIP, the ABA practices, and he says that it is. So doesn't that contradict what you were telling me earlier? Well, I hate to bring in the laws of the IDEA, but the under the IDEA, and that's what the behavior plan specifically refers to, it says a, you know, I, I, IEP, IDEA, it is required to specifically state what it's offering. And there's lots of reasons for that, whether or not the parent knows what they're consenting to. So it's a clear offer that everybody implementing understands what it means. And it did not say ABA, and it did not say one on one anywhere. And he concedes that in let's see. Um, I can. Yeah, it's fine if you find it on rebuttal. Okay, I will find that on rebuttal. I just, unless there's any other questions before I finish my opening, I just would like to say there, there really is no evidence in the record that anything else has ever been effective. And I, I think that that it needs to be addressed, how the judge got to the granting of 52 C, without having any evidence to weigh against OA's request for this medical treatment. And then finally, that, well, what, you know, on a 52 C, what the judge, what the district judge was doing was looking at the evidence you presented in your affirmative case and saying, as a matter of law, did you prove all the essential elements of your failed? Right. So he wasn't looking at the other evidence, he was looking at your evidence. Right. And we had evidence that staff had was so afraid of his behaviors that they had quit working with him refused to work with him. We had evidence that he wandered the school grounds for the last two years of it while he attended, unwilling to go to class, that it was, these things were also conceded to by the district. And let me ask you, when you, when you put on your affirmative case, did you have a witness that, and this is sort of a follow up on Judge Bennett's question, I don't mean to be repetitive, but did you have a witness that got up there and testified? Well, this is if, if the A, if the Holtzenbeck, is that how you say it, Holtzenbeck? Yes. ABA therapist or therapist were in the classroom. This is how O.A. would have meaningful access to an education. What we did have was Ms. Posey describe how she would provide the support in the classroom. And the crossover of the things that they were working on, while not allowed to work on it at school, that provided the same skills exactly that he showed he had significant deficits in at school. So, yes, the, the treatment... I understood the district court's rec, his, the district court's findings of fact and conclusions of law to essentially say that, that you didn't present any such evidence about specifically how ABA, how ABA would facilitate O.A.'s educational, you know, to ensure that he got a meaningful education. Well, the, the district has conceded that he needs ABA support. And... Let me ask you this, during your affirmative case, did they get up and say, yes, we concede that he needs to get a meaningful education, or to obtain a meaningful education, we concede that he needs ABA services? I think that they did, because that was the defense they offered was that they would provide it. The problem is that their program was speculative and not based on any, any firm offer of that. Okay. Did you want to save some time for rebuttal? Yes, yes. Thank you. All right, let's hear from the district. Morning, Molly Thurmond on behalf of the school district. Probably the best way to emphasize the degree to which O.A. failed to establish the elements of his causes of action was to start with the final question that wasn't really but which he has now in this court, clarified that the remedy he seeks is an order from this court, requiring the school district to allow his ABA treatment to be administered to him while at school, as long as it can be reasonably accommodated. So what O.A. is essentially requesting is an order that the school district accommodate his disability, an order that the school district follow the law. But the request, neither the request or the evidence set forth the manner in which the school district could accommodate that other than to this vague, allow his ABA therapist to accompany him to school and administer his treatment. There was no evidence as to what that treatment would consist of, or how it would be administered, or when it would be administered, or the effect it would have on the other children in this classroom while it was being administered, which would result, even if this court were to issue the order that O.A. seeks, would result in endless and daily disputes requiring the court's intervention. For example, the school, the classroom teacher requests the class to pull out their math books. And the ABA therapist said, Oh, O.A., you don't need to do that. You can play with your Game Boy. And I mean, imagine the chaos and disruption to the classroom of something like that. Not to say that would happen. But the, at the end of the day, the remedy that O.A. seeks is simply not reasonable and cannot be done and cannot be enforced. I thought, I'm sorry, Judge Watford, go ahead. Excuse me. Just a quick question. I thought, following up on what Judge Paya said to your opponent, I thought that you were conceding that ABA-based therapy or ABA-trained aid was necessary for O.A. to obtain meaningful access to the educational opportunities in the classroom. Is that not, in fact, the case? It wasn't disputed. It wasn't conceded because it really never came up. O.A. early on insisted, and the district court agreed, that the IDEA was absolutely irrelevant to this case. And so the documents that O.A.'s counsel is referring to now are simply not relevant. The school district did offer one-to-one assistance by an ABA-trained aid supervised by a board-certified behavior analyst. So the school, so I guess you could say the school district agreed that ABA-based services would have assisted him to obtain a free and appropriate public education. And that's not really, that's neither here nor there, and it's not in dispute. To the extent it may be disputed, we can get past it and ignore it. It really doesn't, it's not dispositive of this. And that's because the ask from O.A.'s mother is that there be these specific ABA-trained therapists or aids be allowed in the classroom. Is that what this whole fight is about? You all are saying, well, we have our own people, and she's saying, well, I want these particular people, and that's the entirety of the dispute? No, that's not the dispute at all. One, the ask was not made until after O.A. left the district. And at the time that the ask for the Holzenbeck services was made, O.A. did not even have a private ABA therapist. So the ask could not have been granted at the time. The school district under its obligations or pursuant to its obligations under the IDEA did in the IEP team meetings and pursuant to plaintiff's counsel's insistence, and the mother's request that ABA-based services be provided, did consider that and did offer ABA-based services. But the ask for the private ABA therapist was not made until after he left the district. And at that time, he did not have a private ABA therapist. So the district could not have granted the ask even had it been made. So I guess what I'm trying to clarify, Ms. Thurman, was the IEP, the Individual Educational Program for the FAP, the free educational, free and appropriate public education, didn't have a specific provision as to an ABA therapist. Is that right? Because it had not come up. That's correct. It came up later and in conversations that was discussed and the school district agreed and were in the process of training their aides in ABA techniques. And following up on Judge Watford's question, and that would be down the road in terms of having people there in the system that would be available to apply ABA standards. Correct. So the injunctive relief that OA requested, aside from the fact that it couldn't have been granted, there was no evidence whatever about harm, let alone irreparable harm. Mom testified, she could have and should have testified that he would be harmed and irreparably harmed if the injunctive relief were not granted. There was no evidence to this at all. Well, she doesn't, they don't appeal to the denial of the preliminary injunction, as I understand it. Okay. Right. Do you understand her to be appealing the denial of the injunctive relief? I do, because that was the only request they requested. That was the only relief they requested. So let me ask you this. In your view, since you prevail below, what exactly did the district court do? What, what, what was the district court's whole holding? The district court properly found that plaintiff had not and one of those elements is harm. There was no evidence at all of harm. There was no evidence of medical necessity, or to the extent that that phrase was used repeatedly, there was no evidence as to what medical necessity meant or what it would be or what it would look like or what it was. There was no evidence that OA could not access his education absent the privately funded ABA therapist, no evidence whatever. So the primary question, at the end of the day, and there was no evidence that OA was impeded or prohibited from accessing learning or his education, or the school's, the district's programs, services or benefits, because he was not allowed to There was no evidence, whatever. At most plaintiff presented evidence that that was critical of the school district's offer of a fate said it was not as good as the Holzenbeck treatment plan. And as to this, it should be pointed out that the Holzenbeck treatment plan was admitted solely for the purpose of saying that it was there that the matter included in that plan was not established. So there was no evidence of anything other than at most, OA requires one to one assistance in order to get a free and appropriate public education. The school district offered one to one assistance. There is no evidence that he's unable to participate without the special privately funded ABA therapist. So at the end, it was, quite frankly, shocking deficiency of evidence. The district courts ruling can be upheld on any one of the above grounds and any one of the missing elements, plaintiff's causes of action, and it should be upheld on all of them. Can I follow up with? I'm sorry, good. No, no, go ahead. I just, just so, so I understand the context of this. As a district judge, so you're sitting by designation, we obviously with district court level, we get these IDEA cases, and they come directly from an administrative law judge directly to federal court. And I'm just trying to understand the procedural posture here. This, this is presented here to this court, as it was a, it was a claim under the ADA, the Americans with Disabilities Act, and section 504 of the basis is that he was denied access to ABA therapy. But it doesn't, it didn't come to the district court in the context of an IDEA case on appeal from an administrative, an administrative law judge. And it didn't really come up in the normal context. Isn't a little bit unusual the way this was presented essentially to the district court? It's very unusual. And what's more unusual is that OA's attorney made an effort to obtain a ruling that the IDEA was irrelevant to OA's claims in the district court. And therefore, we focused entirely on the elements of the cause of action under section 504, and the ADA. And ultimately, if they're two day bench trial, the district court under Rule 52 C, where there's no inference in favor of the plaintiff held in favor of the school district in the context of how this case was brought. In a nutshell, that's it, is it not? That's correct. And based upon your experience, normally, these kinds of issues come up in the context straight up of an IDEA, whether you have a FAP and whether or not you have the sufficient IEP, etc. That's normally how these cases would come up to the district court, correct? It's not only normal, but it would be more appropriate. Yeah. You're making me feel better. Because as I got ready for this, I kept saying this is not an IDEA case. And I heard Ms. Marcus earlier say it's not an IDEA case. And I'm like, well, but that's normally how this comes up. And that's not how this was presented to the district court judge in this situation. That's correct. And it this ABA therapy issue has become quite the dispute as to whether it is IDEA based or is not. Yeah. Thank you. The question I have for you is just kind of stepping back and maybe not in the weeds. And I guess I'm not quite certain I understand why the district has been so resistant to basically granting the request of OA's mother. Why wouldn't you as the district say, wonderful, you want to provide your own, you know, one on one aid that we don't have to pay for, who will take care of a child who has been, you know, as I understand it, not only has he not been able to obtain the benefits of a you know, when he's present, it's very disruptive for the other students, you know, hard for the teacher hard for the school districts prior age, why wouldn't you welcome with open arms this offer by OA's mother, I guess I that's the one thing that just puzzled me reading through this this record. And that's, that's a very appealing argument on its face. However, and a lot of school districts do not have the ability do not do not have ABA trained aids, this school district does. And secondly, the privately funded ABA therapist have no certification, they have no educational credentials, they have no basis to be providing anything in the classroom, the they are not under the supervision of the teacher, there was, you know, plain, OA's counsel will argue that, well, they will do what the teacher says they're trained, they're, you know, all kinds of things, but there was no evidence that they there are privacy issues, there's these are special needs kids, there are a lot of privacy issues, there are liability issues and having somebody who is not part of the school district and not under the supervision of the school district in the classroom with other children, and especially with a very disabled child. There, the as to one child, the argument makes more sense. But when you have two, three, five or six special needs kids, each with their own private ABA therapist in the classroom, you can imagine the chaos when they're all doing something entirely different, not under the supervision or control of the teacher and not within the classroom curriculum. So it's a different question when a school district can provide the necessary one to one services that enable a student to access this education, like in this case, or when a school district does not have the resources to develop or to offer those, in which case there may be some argument to have a privately funded ABA therapist with certain restrictions help out in the classroom. Your time is just about up. Did you want to wrap up? I really nothing more to say. Okay. And was there any other questions? Thank you. Thank you. Thank you. I I wanted to just touch on a couple things quickly. I wanted to give the site for when Mr. Hendricks said that there was no written offer. That's in volume two excerpts of record page 195. Also, the court finding that what who would be trained to do what and what would be offered was speculative is at volume two excerpt of record 191. Then I really want to quickly explain two things. One is why this is not an IDEA case. This is not an IDEA case, because we're looking at equality of access. The state of California has said that this child is medically required to receive the applied behavior analysis treatment that he has been prescribed. And yet the state of California's education system will not let him receive that medical treatment that puts a parent in a very difficult position. And it puts a child in a position of not having enjoying equal access if he has to forego that treatment in order to attend school. And the and I can I ask you something, if I can interrupt on this, just because it was very helpful. Miss Thurman's response to me when I have to deal with these on the there's jurisprudence, which indicates that the that the individualized education plan, the IEP may actually require some type of treatment along those lines. And many, many cases, the family successfully says we need to have the child go to a private school and and the school district pays the tuition of the private school. That's really how it works out many times, is it not? Yes, but I guess my question then is what if that's the case, what precludes this proceeding under the IDEA and an IEP that's structured in that fashion, and the family prevails and the school district agrees to pay the tuition at a school that can provide this kind of specific attention? Because under the IDEA, the only thing the school owes the child is, is educational benefit. Under the 504 and ADA, he's owed equal access and that includes access to medical treatment. And the goal of the medical treatment is not that he'd be able to learn to read and write. The goal of it is to ameliorate his autism so that he can live independently as an adult, and so that he can rid himself as of as much of these extreme behaviors as possible. The final thing that I do want to say is that the district had been trying with with this behaviorist and with multiple aides throughout opposing council's argument that this would be disruptive. They had the opportunity to investigate that. And in fact, the obligation once the request was made and never did. This request had been made for years. It is not true that the there was no request for this accommodation. And finally, the the the argument that it would be their burden to prove that they never did. But how could it be any more disruptive than their own aides that they already are required to have any child that who needs it with special education be accompanied by? Finally, this company Holstenbeck is not specifically who we were requesting. We're requesting the right to have his prescription administered in the class. But they have authorization through the local education agency to provide services in the schools. And in fact, there was testimony that they do that all the time. And this is also it. It's it's this wrong on so many levels. There was testimony at trial. But if you're going over your time, so I just I have one last question. It's just more informational. What's the status of the I.D.A litigation? There is there were two due process complaints, multiple C.D.E. complaints. And the due process complaints, one of them settled after hearing and the other went before the same judge who overturned part of it, but did not overturn enough of it. So I am bringing one discrete issue up to you. In another case? Yes. Okay. All right. Thank you. For this court. Yes. Okay. Thank you, Miss. Thank you very much. We appreciate your we appreciate both counsel's arguments this morning. The matter now is submitted for decision. Thank you. Thank you.
judges: PAEZ, WATFORD, Bennett